UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE BURLINGTON INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br>　v.<br><br>GUERDON ENTERPRISES, LLC; CAHILL PARK HOMEOWNERS ASSOCIATION; CAHILL SOUTH LLC; CAHILL ASSOCIATES SOUTH LP; CAHILL ASSOCIATES SOUTH, INC.; CAHILL NORTH CONSTRUCTION, INC.; and CASTLE GROUP CALIFORNIA, INC.,<br><br>　　　　　　Defendants. | Case No. 1:13-cv-00078-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

The Court has before it Defendant Guerdon Enterprises' Motion to Dismiss, Stay or Transfer by Guerdon Enterprises, LLC (Dkt. 10) and Defendant Cahill Park HOA's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 13). The Court has determined that the decisional process will not be aided by oral argument, and therefore issues the following decision based upon the briefs.

### BACKGROUND

In July 2010, Cahill sued Guerdon and several other defendants for the alleged faulty construction of, and resulting property damage to, the Cahill Park condominiums

(the "*Cahill* action"). The *Cahill* action is currently pending in California Superior Court for Santa Clara County. Guerdon is a defendant in the *Cahill* action because it manufactured in Idaho allegedly defective modular buildings or modular building components and shipped them to California for installation in the condominiums.

Subject to a reservation of rights, Burlington assumed the defense of Guerdon in the *Cahill* action. Burlington no longer wishes to continue in that role. To that end, on February 14, 2013, Burlington brought this action seeking a declaration that it has no duty to indemnify Guerdon and may cease its defense of the *Cahill* action.

Burlington bases its arguments on the language contained in five commercial general liability policies it issued to Guerdon. *Complaint*, ¶20, Dkt. 1. In combination, the policies cover Guerdon from April 2003 through April 2008, with each policy covering one year. Apart from different policy numbers and coverage periods, however, the policies contain identical coverage provisions.

The policies provide coverage for "those sums the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which" the contract applies. *Id.* ¶24. The contract applies to property damage caused by an "occurrence." *Id.* An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* The policies also include a number of identical exclusions, lettered J through M and a fungi or bacteria exclusion. *Id.* ¶¶40, 44, 48, 53, 57. Burlington argues that Guerdon's alleged faulty manufacturing

does not qualify as an "occurrence" or falls within an exclusion. Furthermore, Burlington argues that the property damage fell outside of the policies' coverage periods.

Just over a month after Burlington filed this action, American Hallmark Insurance Company of Texas ("American") filed a similar declaratory judgment action against Guerdon in California Superior Court for Santa Clara County (the "*American* action"). Dkt. 10-8. American also seeks a declaration that it has no duty to indemnify or defend Guerdon under its policies "with respect to the alleged claims and damages sought by [the plaintiff] in the *Cahill* action." *Id.* ¶18. In support of its claim, American points to six exclusions in the commercial general liability policies it issued to Guerdon. *Id.* ¶17. The *American* action is stayed pending resolution of the *Cahill* action. *See Reply*, p. 4, Dkt. 24.

In response to Burlington's declaratory judgment action, Guerdon filed its motion to dismiss, stay, or transfer this action. About a week later, Defendant Cahill filed its motion to dismiss for lack of personal juristiction.

## ANALYSIS

1.  **Motion to Dismiss, Stay or Transfer**

Pursuant to the Declaratory Judgment Act, federal courts "may declare the rights and other legal relations of any interested party seeking such [a] declaration." 28 U.S.C. § 2201(a). The permissive language of the Act provides district courts with broad discretion to abstain from exercising jurisdiction over a declaratory judgment action so long as doing so "furthers the Declaratory Judgment Act's purpose of enhancing judicial

economy and cooperative federalism." *R.R. Street & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (internal quotation marks omitted).  While "there is no presumption in favor of abstention in declaratory actions generally," the presence of "parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed [raises] a presumption that the entire suit should be heard in state court."  *GEICO v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc).

In exercising its discretion, "[t]he *Brillhart*[1] factors remain the philosophic touchstone" for the Court.  *Id.*  They are: (1) avoi*d*ing needless determinations of state law issues; (2) avoiding duplicative litigation; and (3) discouraging litigants from forum shopping. *Id.*  While the *Brillhart* factors are not exclusive, *id.* n.5, they are sufficient to guide the Court's resolution of this motion.

### A.   Needless Determination of State Law Issues

The first *Brillhart* factor states that the Court should avoid needless determination of state law issues. Both sides agree that this case will likely be resolved under state law. The case involves insurance law, an area Congress has expressly left to the states through the McCarran-Ferguson Act. 15 U.S.C. §§ 1011-12 (1988). In similar cases, where "the sole basis of jurisdiction is diversity of citizenship," the Ninth Circuit has stated that "the federal interest is at its nadir." *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991) *overruled on other grounds* by *Dizol*, 133 F.3d 1220.

---

[1] *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)

However, because the parallel proceeding in the California state court does not deal with the precise issue at stake in this case – the Burlington policy coverage issue – and there is no pending Idaho suit, there is no proceeding which will reach a resolution of the state law issues in this case. Accordingly, the Court's decision in this case would not constitute a needless resolution of state law. *See American Cas. Co. v. Krieger*, 181 F.3d 1113, 1119 (9th Cir. 1999).

### B.     Avoiding Duplicative Litigation.

At first blush, the risk of duplicative litigation may seem apparent. However, the two actions are not duplicative simply because they involve some of the same parties and they stem from the same construction site. A closer look at the two cases suggests no concern for duplicative litigation if this case proceeds.

The *Cahill* action does not concern the coverage issues underlying this suit, and it will not resolve the contract questions raised in this suit. Dkt. 17 at 11. The cause of the damage to the Cahill condominiums and when that damage occurred are clearly at issue in the *Cahill* action. *See Cahill Complaint*, ¶ 82, Dkt. 10-3. The answers to those questions may ultimately determine how much, if any, Burlington must cover in damages – but only if Burlington is contractually obligated to cover Guerdon's allegedly faulty workmanship. And that contractual question is what is before this Court. Thus, the questions of fact and law do not overlap in the two matters. Accordingly, there is no concern about conflicting judgments.

With respect to the *American* action, although both American and Burlington believe that exclusions J, K, L, and M and the fungi and bacteria exclusion apply to Guerdon's alleged faulty manufacturing in their respective contracts, the fact remains that we are talking about two separate sets of contracts. The same general exclusions do appear in the same general area of the insurers' respective policies, and their language is similar in many instances, but that does not mean one controls the other. Thus, although an argument can be made that it could be more efficient for one court to apply this common language to the facts of the case as found by the *Cahill* court, it does not create a concern for duplicative litigation.

### C. Discouraging Forum Shopping.

This case is not an "archetyp[al]" instance of reactive litigation, wherein an insurance company seeks a declaratory judgment "against its insured during the pendency of a non-removable state court action presenting the same issues of state law." *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1372 (9th Cir. 1991) *overruled in part on other grounds by Dizol*, 133 F.3d at 1220.  The insurance issues raised in this suit are not before the *Cahill* court, and nothing in the record suggests that Burlington knew of the *American* action before it filed in this Court.  *See id.* at 1372-73.  Moreover, every plaintiff seeks a favorable forum when filing a suit, and this Court shares the Ninth Circuit's concerns over "labeling as 'forum shopping' a plaintiff's desire to bring previously unasserted claims in federal court. The desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute

implementing Article III." *R.R. Street & Co.*, 656 F.3d at 982 (internal quotation marks and alteration omitted). Accordingly, the Court will deny the Motion to Dismiss, Stay or Transfer this case.

**2.     Motion to Dismiss for lack of Personal Jurisdiction**

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that the Court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004). Because there has not been an evidentiary hearing on the matter, Burlington must satisfy this burden by making a *prima facie* showing that the Court has jurisdiction over the defendant. *Id*. Although Burlington cannot "simply rest on the bare allegations" in its complaint, the Court accepts as true the uncontroverted allegations in its complaint. *Id*. (internal quotation mark omitted). Furthermore, conflicting statements in the parties' affidavits will be resolved in the plaintiff's favor. *Id*.

Because there is no federal statute which controls the Court's personal jurisdiction in this matter, the Court applies the law of Idaho. See  Fed. R. Civ. Pro. 4(k)(1)(A); *Schwarzenegger*, 374 F.3d at 800. Idaho's long arm statute is coextensive with the limits of due process. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir.1987). Thus, the only question is whether the constitutional standard is met in this case. *Schwarzenegger*, 374 F.3d at 800.

The Due Process Clause of the Fourteenth Amendment allows state courts, and therefore this Court, to exercise personal jurisdiction over an out-of-state defendant if the

defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted). "Endeavoring to give specific content to [International Shoe's] 'fair play and substantial justice'" standard, the Supreme Court has recognized two categories of cases in which personal jurisdiction exists over a foreign defendant. *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 131 S.Ct. 2846, 2853 (2011). First, a court has specific jurisdiction over a defendant when the defendant's actions within the forum state give rise to the cause of action. *Id*. Second, where a defendant's contacts with the forum are "continuous and systematic," courts may exercise general jurisdiction over the defendant "on causes of action arising from dealings entirely distinct from [the defendant's in-state] activities." *Id*. (internal quotation mark omitted). Here, Burlington does not assert general jurisdiction. Accordingly, the only question before the Court is whether the Court has specific jurisdiction over the claims.

    **A.**    **Specific Jurisdiction**

The Ninth Circuit analyzes specific jurisdiction according to a three-prong test: (1) the defendant must perform an act or consummate a transaction such that it purposefully avails itself of the privilege of conducting activities in the forum; (2) the claim must relate to or arise out of the defendant's activities in the forum; and (3) the court's exercise of jurisdiction must be reasonable. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006); *Schwarzenegger*, 374 F.3d at

802. Burlington bears the burden of satisfying the first two prongs of the test. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). If Burlington succeeds in satisfying the first two prongs, the burden shifts to Cahill to come forward with a compelling case that the exercise of jurisdiction would not be reasonable. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir.2008) (internal citation omitted).

### *(1)    Purposeful Availment*

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (citing *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). Parties "who reach out beyond one state and create continuing relationships and obligations with citizens of [the forum state]" are subject to personal jurisdiction in that forum. *Burger King Corp.*, 471 U.S. at 473. This requirement is satisfied if the defendant "has taken deliberate action" toward the forum state. *Ballard v. Savage*, 65. F.3d 1495, 1498 (9th Cir. 1995). It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are "purposefully directed" toward forum residents. *Id.* (citing *Burger King Corp.*, 471 U.S. at 476).

Burlington argues that this Court may exercise jurisdiction over Cahill "due to the nature and quality of its contacts with the State of Idaho arising out of the litigation that gave rise to the subject claim." *Def.'s Resp.,* p. 6, Dkt. 16. Burlington makes three arguments in support of this general argument that Cahill purposefully availed itself of

doing business in Idaho through the underlying litigation: (1) Cahill purposefully availed itself of the laws of Idaho because Guerdon, one of the defendants in the California case, has ties to Idaho and is insured by a company with ties to Idaho; (2) Cahill purposefully availed itself of the laws of Idaho because of Cahill's third-party beneficiary status for its claims against Burlington's insured, Guerdon; and (3) Cahill purposefully availed itself of the laws of Idaho because the creation of the condominium project at issue in the California case suggests Cahill was involved in the contracting with Burlington's Idaho-based insured, Guerdon. None of these arguments are persuasive.

To be perfectly honest, one of the most telling signs that none of these arguments succeed is the fact that they are confusing and difficult to understand – essentially they take a very winding road to reach a conclusion that Cahill purposefully availed itself of the laws of Idaho. With regard to the first argument, Burlington cites no authority for its proposition that a plaintiff somehow avails itself of State A's laws simply because it filed suit in State B and named a defendant with some tangential tie to State A or because that defendant is insured by a company with ties to State A. Likewise, Burlington cites no authority for its suggestion that Cahill's potential third-party beneficiary status to a contract between other parties means Cahill purposefully availed itself of the laws of Idaho. Finally, Burlington's suggestion that even though Cahill did not contract with an Idaho resident, it somehow availed itself of the laws of Idaho because some of its former members may have been part of a contract with Guerdon is a stretch. In the end, the

Court cannot find that Cahill has taken "deliberate action" toward Idaho. Accordingly, the first prong of the specific jurisdiction test is not satisfied.

### (2) Relatedness

The second prong is likewise not satisfied. The next requirement for specific jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities. *See Yahoo! Inc.*, 433 F.3d at 1205–06. Because the Court could not find any forum related activities, it follows that the claims in this litigation arose from some forum-related actions.

However, even if Cahill somehow purposefully availed itself to the laws of Idaho "due to the nature and quality of its contacts with the State of Idaho arising out of the litigation that gave rise to the subject claim," there is no evidence that Burlington's claims arise out of any forum related activities. Cahill did not have contact with Idaho by suing Guerdon in California even if Cahill is successful in that lawsuit and tries to directly sue Burlington. Again, to be frank, Burlington's somewhat convoluted argument is difficult to follow, and the Court understands it only enough to know it is without merit.

### (3) Reasonableness

Finally, even if Burlington satisfied the first two prongs, the burden would merely shift to the Cahill to "present a compelling case that the exercise of jurisdiction would not be reasonable." *See Boschetto*, 539 F.3d at 1016. To determine the reasonableness of exercising specific jurisdiction over a nonresident defendant, the court typically considers

the following factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Menken*, 503 F.3d at 1057 (citing *Burger King Corp.*, 471 U.S. at 476–477). Here, Cahill has met its burden.

The first factor is largely co-extensive with the purposeful availment prong. For the same reasons explained in the purposeful availment discussion above, the Court finds that this factor weighs strongly in favor of Cahill. Essentially, the extent of Cahill's purposeful interjection into Idaho is nil.

Regarding the second factor, Cahill, which has no offices in Idaho, will be burdened by litigating this case in Idaho. The burden is especially high because Cahill is already defending itself in the California action and would need to continue doing so even if this case proceeded simultaneously.

The third factor – conflicts with the sovereignty of the defendant's state – is essentially a non-factor here. Although the parties seem to agree that concerns regarding conflicts of sovereignty are adequately addressed by the choice of law rules applied in this case, there is no indication that Idaho or California is the better forum.

With respect to the fourth factor, Idaho has no real interest in adjudicating Burlington's claims against Cahill. Although the Court has an interest in the limited issue

of determining the coverage issue regarding the Burlington/Guerdon contract, it has little or no interest in the California construction defect dispute.

In evaluating "the most efficient resolution" factor, the Ninth Circuit has "looked primarily at where the witnesses and the evidence are likely to be located." *CoreVent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). Here, the parties did not provide the Court with much information about the witnesses, and the evidence should be fairly limited given the simple claims in this case. Thus, even if this factor supports Burlington, it is weighs only slightly in their favor.

Regarding the sixth factor – the importance of the forum to the plaintiff's interest in convenient and effective relief – California is at least as convenient because the underlying suit is already proceeding there. Thus, the Court does not find that this forum is especially efficient for Burlington, and this factor weighs against finding specific jurisdiction.

Regarding the final reasonableness factor, Burlington bears the burden of proving the unavailability of an alternative forum. *CoreVent Corp.*, 11 F.3d at 1490. Burlington has failed to meet this burden – this action could proceed in California. Therefore, this factor weighs against exercising personal jurisdiction over Cahill. *See CE Distrib.*, 380 F.3d at 1112.

Weighing all seven factors, the Court concludes that even if Burlington met the first two prongs of the specific jurisdiction test, Cahill has met its burden of showing that

the exercise of jurisdiction would be unreasonable. Accordingly, the Court will grant Cahill's motion to dismiss.

## ORDER

**IT IS ORDERED THAT:**

1. Plaintiff's Motion to Dismiss, Stay, or Transfer (Dkt. 10) is **DENIED**.

2. Defendant Cahill Park Homeowners Association's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 13) is **GRANTED**.

DATED: October 28, 2013

_____
B. Lynn Winmill
Chief Judge
United States District Court